ROBERTS and others, Executors, Respondents, vs. WAUKE-
SHA COUNTY and others, Appellants.

*October 26—November 12, 1909.*

*Taxation: Reassessment after refund on void tax sale: Misdescrip-
tion of land.*

The power of the county board under sec. 1186, Stats. (1898), to
direct a reassessment of the taxes justly chargeable upon lands
when the original assessments were invalid because of irreg-
ularities in the tax proceedings, embraces all cases in which,
under sec. 1184, by reason of the invalidity of the tax sales
or certificates, the county is liable to refund the money paid
to it, including a case where the land was misdescribed in the
original assessment and the tax certificate, if the description
was sufficient to enable the board to ascertain what land was
actually attempted to be assessed.

APPEAL from a judgment of the circuit court for Wauke-
sha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

The original plaintiff died after bringing the action and it
was continued in the name of the present plaintiffs. June
17, 1892, the original plaintiff in this action became the
owner of certain real estate situated in the S. ½ of section 3
and in the N. W. ¼ of section 10, town 8, range 20 E., in the
village of Menomonee Falls, Waukesha county, Wisconsin.
The deed conveying the property is recorded in volume 81 of
Deeds, pages 551–554 inclusive, in the office of the register
of deeds for Waukesha county, Wisconsin. In the assess-
ment roll and the tax roll for the taxes of 1895 the lands are
described as follows: "Owner, R. W. Roberts, SW pt SE ¼
SW ¼ and pt NW ¼ as per description in deed, Vol. 81,
page 551, sec. 3–10, town 8, range 20." Instead of "as per
description in deed, Vol. 81, page 551," the assessor used
"as described in deed" in 1896, and "as per description in
deed" in 1897. In the assessments of 1898, 1899, 1900,
1901, and 1902 no words referring to the deed were used in
the description. In 1899 and thereafter "SW ¼" was also

omitted from the description as previously given, and in 1900 and thereafter instead of "NW ¼" the assessor used "S pt NW ¼."

The plaintiff paid no taxes upon his property for any of the years enumerated above. At the tax sales for the sale of lands for unpaid taxes for the various years enumerated, except the year 1902, tax certificates were issued according to the descriptions in the assessment and tax rolls. In 1902 the holder of the tax certificates issued in 1896, 1897, and 1898 on the sales for the unpaid taxes for 1895, 1896, and 1897, having discovered the misdescription, applied to the county board for a refund of the money paid for the tax certificates. The county board on December 2, 1903, ordered the refund, the cancellation of the tax certificates, and that the county clerk in the next apportionment of county taxes should include the sums refunded, with the interest allowed under the statutes, as a special tax to be collected from the land which should have paid the original tax. The misdescription in the assessment and tax rolls for the taxes of 1902 was discovered too late for the correction to be made in the assessment for that year, but the lands were withheld from sale at the tax sale in 1903 on this account. The assessment for 1903 included the taxes regularly assessed for that year, a reassessment of the taxes for 1902, and the taxes for the years 1895, 1896, and 1897 with the statutory interest. These taxes were not paid, and at the sale in 1904 the lands were sold to the county for the taxes and a tax certificate was issued to the county. On December 11, 1905, the county board ordered a refund of the taxes to the holders of the respective tax certificates of 1899, 1900, 1901, and 1902, and that the taxes so refunded, together with the statutory interest, should be levied as a special tax with the 1905 taxes upon the property of the plaintiff. The tax so levied was not paid, and at the tax sale in the succeeding year the lands were sold to the county for the taxes and a tax certificate issued to the county.

Plaintiff brought this action to restrain the issuance of tax deeds based on the tax certificates so held by the county. The trial court held that the orders of the county board ordering the reassessment of the taxes which were invalid for misdescription were invalid and void, and ordered the cancellation of the tax certificates. The court also prohibited the issuance of tax deeds based on the tax certificates on condition that the plaintiff pay the taxes levied for 1903 and 1905. This is an appeal from the judgment.

For the appellants there was a brief by *Milo Muckleston,* district attorney, and *V. H. Tichenor,* of counsel, and oral argument by *Mr. Tichenor.*

For the respondents the cause was submitted on the brief of *Goodrich & Goodrich.*

SIEBECKER, J. The trial court adjudged that the tax certificates issued on the sale of the plaintiff's lands under the tax sales for the unpaid taxes which the county board had directed reassessed under sec. 1186, Stats. (1898), should be canceled and that the county should be restrained from issuing tax deeds thereon. This decision was made upon the ground that the county board had no power to assess the amount of tax justly due and chargeable on the plaintiff's lands included in the reassessment, because such attempted reassessment was upon lands not embraced in the original assessment on which the county board had refunded the money paid to it on the sale of the lands for nonpayment of taxes, the proceedings being deemed invalid because of a defective description of the lands sought to be assessed. From the foregoing statement it appears that the lands assessed to the plaintiff in the original assessment and described in the tax certificates on the tax sales were so imperfectly described as to render the tax certificates issued on the tax sales for nonpayment of taxes invalid. Upon discovery of this condition it appears that the county board ordered and directed "that the money paid for such certificates on the sale and all

subsequent charges thereon" should be refunded with interest to the owner of the certificates upon delivery of the certificates for cancellation. These amounts were so refunded by the county.

It is conceded by both parties that the sole controversy on this appeal turns on the question whether or not the county board under sec. 1186, Stats. (1898), is given the power to make a reassessment under a correct description of the amounts of the taxes justly chargeable upon plaintiff's lands. There is no question but that the plaintiff's property is a proper subject for taxation within the taxing district of the original assessment and levy of the tax. It appears that the assessor intended to assess the lands to the plaintiff, and that an attempt was made to levy the amounts specified against the lands of the plaintiff by naming him as the owner of part of the lands in the two sections, but that the description of his real estate in the tax roll and the proceedings of the tax sale was an erroneous description of the lands plaintiff owned in government sections Nos. 3 and 10, lying in the village of Menomonee Falls. It also appears that the county board considered that the amount of the tax they so levied in their proceedings of reassessment was the correct and proper amount of the taxes justly chargeable on the plaintiff's lands embraced in the resolutions. The plaintiff's real estate consists of a very irregularly shaped piece of land situated in the village of Menomonee Falls in sections 3 and 10. It is not questioned but that the tax certificates issued on the sales for the nonpayment of the taxes prior to the reassessment were invalid because of the erroneous descriptions of the land on which the taxes were attempted to be levied. The respondents rest their right to restrain the county from proceeding to issue tax deeds on the tax certificates on the ground that the tax proceedings prior to the reassessment under the resolutions of the county board levied no tax upon their land because it is so defectively described as to render the tax sale

void, and it was on this account that the county board was compelled, under sec. 1184, Stats. (1898), to refund the money received on such sales with charges and interest. The question is: Can the county board, under the power and duties conferred by sec. 1186, Stats. (1898), direct that a tax be levied for the amount justly chargeable as a tax on plaintiff's real estate for the years embraced in the void assessment? It is averred that the county board has no such power in this instance because the county board can only direct an assessment of a tax, under this section of the statutes, when the lands "described in such certificate or deed were justly taxable for such tax or a portion thereof." The argument is that, since the lands described in the certificates in question do not describe plaintiff's lands, no assessment could be directed thereon. This contention is upon the ground that the county board is restricted in directing such an assessment to lands correctly described in the tax certificate or deed, and that errors in description cannot be corrected in such proceedings by the county board.

The powers conferred by the provisions of sec. 1186, Stats. (1898), must be considered in connection with the provisions of sec. 1184, Stats. (1898). These two sections of the statutes should, if reasonable, be so interpreted as to operate harmoniously. It is obvious that the legislature intended that the power of the county board under sec. 1186, Stats. (1898), to direct a reassessment of taxes upon lands in cases where the original assessments are invalid on account of irregularities in the tax proceedings, was to embrace all cases under sec. 1184, Stats. (1898), whereby the county is liable to refund the money paid it on account of the invalidity of a tax certificate or tax deed. The liability of the county to refund taxes for errors in description which make a tax void is not questioned, and we think properly not. Since the power of the county board to direct reassessments is to provide a tax in cases where the original levy fails for errors in the tax

proceedings, we perceive no reason why it does not embrace a case where a tax is void on account of a misdescription, and why it does not vest authority in the county board to correct such error.

It is argued that the descriptions embraced in the original assessments and the tax certificates are so defective as to make it impossible for the county board to determine that the plaintiff's lands were taxable for any amount. Though the descriptions in the original assessments and the tax certificates were so defective as to render the certificates invalid, yet it sufficiently appeared that the taxes were attempted to be levied upon lands owned by the plaintiff, by reference to his deed in some instances, and by reference to the government sections and parts thereof in all instances. We find that the original tax proceedings were sufficient to authorize the county board to ascertain what lands were actually attempted to be assessed and to direct the reassessment.

We cannot sustain the decision of the trial court holding that the county board was without power and jurisdiction in directing that the plaintiff's lands were legally taxable for the sums the board found to be just and proper taxes. The reassessments pursuant to the resolutions of the county board, and the issuance of the tax certificates on the sale of the plaintiff's lands for nonpayment of the taxes included in such reassessments, must be held to have been legally authorized. The tax certificates should not have been canceled, nor should the county and its clerk be restrained from issuing tax deeds on these tax certificates.

*By the Court.*—Judgment reversed, and the cause remanded to the lower court to award judgment dismissing the complaint.